UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 20 CR 588 |
| vs. | ) | |
| | ) | Judge Martha Pacold |
| ZVI FEINER | ) | |

# GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES of AMERICA, through its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum.

## I. Background

Defendant was the manager of FNR Healthcare, LLC ("FNR Healthcare"), which was a healthcare investment business. His codefendant, Erez Baver, served as a bookkeeper for the business. As part of this business, defendant created a number of associated limited liability companies ("LLCs") that operated under the FNR Healthcare umbrella. These LLCs acted as investment vehicles to acquire and manage specific healthcare facilities.

In order to obtain funds to acquire healthcare facilities as part of this venture, defendant solicited individuals, including individuals residing in the Northern District of Illinois, to provide investment capital by purchasing membership interests in the LLCs that owned the facilities. The terms of each investor's membership interest were set forth in an operating agreement executed by each investor. Each operating agreement represented, among other things, that the investor would

receive investment proceeds, including quarterly distributions of the net income generated by the LLC, on a pro rata basis based on the investor's membership percentage and capital contribution; that upon the dissolution of the LLC, and following the discharge of the LLC's debts and liabilities, the investor was entitled to the repayment of the balance of the investor's capital contribution, plus any additional profit on a pro rata basis based on the investor's membership interest; and that defendant had exclusive authority to manage and operate the LLC, including the making of any expenditures, the lending or borrowing of money, and incurring any obligations deemed necessary for the conduct of the activities of the LLC as well as the ability to use the assets of the LLC "for any purpose and on any terms [he] sees fit, including, without limitation, the financing of the conduct of the operations of the [m]anagers of the LLC, the lending of funds to other [p]ersons and the repayment of obligations of the LLC."

The healthcare facilities owned and managed by defendant under the FNR Healthcare umbrella included a facility in Wayne, New Jersey owned by FNR Lakeview LLC (the FNR Lakeview facility); a facility in Savoy, Illinois owned by FNR Champaign LLC (the FNR Champaign facility); and a facility in Danville, Illinois owned by FNR Vermilion (the FNR Vermilion facility). FNR Healthcare through the respective LLCs i) purchased the FNR Lakeview facility on or about June 29, 2012 for $7,080,000 after selling membership interests in the FNR Lakeview LLC to DG, IS, HL, IS-2, and LF;[1] ii) purchased the FNR Champaign facility on or about

[1] The government is using only initials to protect the privacy rights of the investors.

December 31, 2012 for $11,500,000 after selling membership interests in FNR Champaign LLC to Individuals DG, IS, HL, IS-2, LF, and ED/AD (a married couple); and purchased the FNR Vermilion facility on or about August 1, 2013 for $3,400,000 after selling membership interests in FNR Vermilion LLC to DG, IS, HL, IS-2, MD/GD (a married couple), SS, the Estate of RJ, and SW.

As part of the scheme to defraud alleged in the Superseding Information, defendant defrauded the investors who purchased membership interests in the three LLCs specifically discussed above by selling the facilities owned by those LLCs without the investors' knowledge and then misappropriating a portion of the sales proceeds to which investors were entitled under the LLCs' operating agreements by using some of the proceeds towards other facilities or for other purposes, including personal purposes.

*FNR Lakeview*

On or about September 4, 2015, defendant caused FNR Lakeview LLC to sell the skilled nursing facility it owned to another company. The sale generated gross proceeds of approximately $3,179,459, but defendant failed to timely inform all of the investors of the sale or proceeds generated by the sale. Instead, defendant along with his codefendant caused these proceeds to be transferred to the FNR Healthcare operating account and, following the transfer, used some of those proceeds to pay down expenses of FNR Lakeview while also using other portions for other purposes, including to pay expenses of other facilities.

Defendant and his codefendant concealed the sale of the FNR Lakeview facility from certain investors by continuing to pay quarterly distributions to certain investors after the sale. Defendant and his codefendant caused continued quarterly distributions to be made to HL between October 2015 and August 2016, which would have been approximately a year after the sale of the facility. Defendant also sent an email to another investor in January 2017 stating that he had not yet received the sale proceeds. The email stated, in relevant part, as follows:

> Erez is still working on the calculations for the checks. I have still not received the wire for Lakeview though I have been promised it was being sent. I hope to be able to drop them off Sunday or Monday.

*FNR Champaign*

On or about July 25, 2014, defendant caused FNR Champaign LLC to sell the skilled nursing facility it owned to another company. The sale generated gross proceeds of approximately $5,261,019, but once again defendant failed to timely inform all of the investors of the sale or proceeds generated by the sale. Instead, defendant and along with his codefendant caused these proceeds to be transferred to the FNR Healthcare operating account and, following the transfer, used some of those proceeds to pay down expenses of FNR Champaign LLC and payoff some of the larger investors while also using other portions for other purposes, including to pay expenses of other facilities.

Defendant and his codefendant concealed the sale of the FNR Champaign facility from certain investors by continuing to pay quarterly distributions to certain investors after the sale. Defendant and his codefendant caused quarterly

distributions to continue to be made to HL and MD/GD between October 2014 and November 2016, which would have been approximately sixteen months after the sale of the facility. Defendant and his codefendant also caused an email to be sent to investors on or about April 12, 2015 stating that the facility had been optioned on December 31, 2014 (as opposed to the actual sale/option date of July 15, 2014) and that the sale proceeds were expected to be paid as part of a seller's note in 2015. Specifically, the email read "[a]s the facility was optioned by our tenant 12/31/14, per our accountant the capital gain should be reported in your 2014 k-1 while the funds will be distributed upon payment of the seller note (which will continue to earn the same return with less risk) which is expected some time in 2015."

*FNR Vermilion*

On or about April 30, 2015, defendant caused FNR Vermilion LLC to sell the skilled nursing facility it owned to another company. The sale generated gross proceeds of approximately $5,526,000 but once again defendant failed to timely inform all of the investors of the sale or proceeds generated by the sale. Instead, defendant and along with his codefendant caused these proceeds to be transferred to the FNR Healthcare operating account and, following the transfer, used some of those proceeds to pay down expenses while also using other portions for other purposes, including to pay expenses of other facilities.

Defendant and his codefendant concealed the sale of the FNR Vermilion facility from certain investors by continuing to pay quarterly distributions to certain investors after the sale. Defendant and his codefendant caused quarterly

distributions to be made to DG, SS, the Estate of RJ, and SW between July 2015 and July 2017, which would have been nearly two years after the sale of the facility. On July 13, 2015, defendant emailed a representative of the Estate of RJ saying that that the sale or option of the facility, which had already been completed, "will likely be closer to the end of the year."

## II. Advisory Guidelines Range

It is the government's position that the following base offense level and provisions apply for purposes of calculating defendant's advisory Guidelines range:

*Base Offense Level*

The base offense level for the offense of conviction, namely, 18 U.S.C. § 1343, is 7, pursuant to Guideline § 2B1.1(a)(1).

*Loss Enhancement*

The base offense level should be increased by 12 levels pursuant to Guideline § 2B1.1(b)(1)(G) because the loss is more than $350,000 but less than $750,000. Specifically, the actual loss for purposes of the Guidelines calculation was approximately $689,240.

The government's loss calculation is premised upon the actual loss to the investors resulting from the investments made in three facilities involved in the scheme alleged in the Superseding Information as the time of the discovery of the fraud (around summer of 2017). The government calculated the actual loss by taking the amount contributed by each investor and reducing those payments subsequently

made back to those investors prior to the discovery of the fraud. These calculations are reflected in *Attachment A*.[2]

To be clear, the actual loss calculation does not include payments made to investors after discovery of the fraud. According to the government's calculations, those post-discovery payments reduced the actual loss to zero for purposes of restitution for the three transactions involved in the offense of conviction. There is, accordingly, no loss for purposes of restitution related to the limited scheme charged in the offense of conviction.

*Acceptance of Responsibility*

The government maintains that defendant is entitled to a three-level reduction for timely acceptance of responsibility pursuant to Guidelines §§ 3E1.1(a) and (b).

*Zero-Point Offender*

Defendant does not receive any criminal history points known to the government from Chapter Four, Part A, and otherwise meets the criteria set forth in Guideline § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

*Advisory Sentencing Guidelines Range*

An offense level of 14 and a Criminal History Category of I result in an anticipated advisory Guidelines range of 15 to 21 months imprisonment (Zone D).

[2] The government did not include LF or IS-2 in its loss calculations as both of these investors requested not to be treated as victims. Treating the investments of married couples as a combined investment, this results in losses for purposes the Guidelines to the following investors: DG, IS, HL, ED/AD, MD/GD, the Estate of RJ, SS, and SW,

## III. <u>Sentencing Factors and Recommendation</u>

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the "particular" sentence to impose, the Court must consider the statutory factors listed in 18 U.S.C. § 3553(a)(1)-(7). These factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, and to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Section 3553 also requires the Court to consider the advisory range set by the Sentencing Guidelines. *Id.* § 3553(a)(4), (a)(5). Although the Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

As set forth in the plea agreement, the government is recommending that the Court not impose a custodial sentence in this matter. Defendant engaged in a scheme to defraud that continued over a period of years and that involved repeated acts of fraud to benefit himself and other entities that he managed while causing losses to investors. As part of this scheme, defendant concealed the sale of three health care facilities from numerous investors in order to allow him to make other use of the funds. The other use of the funds included paying off expenses or loans to other

facilities owned under the FNR Healthcare umbrella as well as his own personal expenditures or investments. The misconduct thus reflects not a single impulsive act, but a sustained pattern of financial misrepresentation and misallocation of investor funds. And this misconduct resulted in significant financial harm to innocent investors.

Nevertheless, the offense conduct, while unquestionably serious, must be evaluated together with the defendant's personal history and post-offense conduct. Defendant had no criminal history prior to the commission of this offense and, since the initiation of charges in this case, has complied consistently and fully with all conditions of pretrial release. The government is aware of no evidence indicating that the defendant has engaged in any additional criminal conduct since the underlying fraud was discovered in early 2017, a period now approaching a decade. This uninterrupted period without further unlawful behavior is a significant indicator that there is not a continuing risk of recidivism.

Further, defendant, with meaningful assistance from his father, has undertaken sustained efforts to repay those harmed by his actions. These efforts have included making payments to investors who suffered losses both in connection with the facilities directly tied to the offense of conviction and in relation to investments in other FNR Healthcare facilities. While restitution efforts do not erase the harm caused, they demonstrate a material acknowledgment of responsibility and reinforce defendant's commitment to repairing, to the extent possible, the financial injuries suffered by the victims.

Additionally, the public attention generated by the criminal charges—as well as the separate civil enforcement action filed by the Securities and Exchange Commission (Case No. 19-CV-6269, N.D. Ill.)—have undoubtedly imposed significant reputational, professional, and financial consequences on the defendant. These collateral consequences provide meaningful specific deterrence and strongly diminish the likelihood that the defendant will again find himself in any position to engage in similar conduct. In the government's assessment, these consequences, combined with the defendant's lack of criminal history, his demonstrated compliance with supervision, and his lengthy period of law-abiding conduct since the discovery of the fraud, collectively weigh in favor of a non-custodial sentence.

In view of all these considerations, the government submits that a non-custodial sentence accompanied by appropriate conditions, including the imposition of community service and restrictions on travel, will provide meaningful accountability and deterrence while avoiding the counterproductive effects of incarceration. In light of the totality of the circumstances and the § 3553(a) factors, such a sentence is sufficient but not greater than necessary to achieve the purposes of sentencing.

## IV. Conditions of Probation

The government proposes the Court impose the mandatory and discretionary conditions set forth below pursuant to 18 U.S.C. § 3563 as part of a probationary sentence in this matter.

*Mandatory Conditions*

The government submits that the Court should impose the following mandatory conditions of probation under § 3563(a):

- (1) that the defendant not commit another Federal, State, or local crime during the term of probation;
- (2) that defendant also by at least one condition set forth in subsection (b)(2) or (b)(12);
- (3) that the defendant not unlawfully possess a controlled substance;
- (5) that the defendant refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance, but the condition stated in this paragraph may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant;
- (6) that the defendant pay the assessment imposed in accordance with section 3013;
- (7) that the defendant notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments; and
- (9) that the defendant cooperates in the collection of a DNA sample from the defendant if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000.

*Discretionary Conditions*

The government recommends that the Court impose the following discretionary conditions of probation pursuant to § 3563(b)(2):

- (4) that defendant work conscientiously at suitable employment or pursue conscientiously a course of study or vocational training that will equip him for suitable employment;

- (5) that defendant refrain from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, namely, any occupation involving the solicitation of investments or involvement in the management of investments or investment facilities;

- (6) that defendant not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity;

- (7) that defendant refrain from excessive use of alcohol (having a blood alcohol concentration greater than 0.08), or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

- (8) that refrain from possessing a firearm, destructive device, or other dangerous weapon;

- (12) that defendant work in community service as directed by the court;

- (14) that defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer;

- (15) that defendant report to a probation officer as directed by the Court or a probation officer;

- (16) that defendant permit a probation officer to visit him at any reasonable time at home, at his work, at his school, at a community service location, or any other reasonable location specified by a probation officer;

- (17) that defendant notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege; and

- (18) that defendant notify a probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer.

*Special Conditions*

The government recommends that the Court impose the following special conditions of probation pursuant to § 3563(b)(22):

- that defendant pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release probation; and

- that defendant does not enter into any agreement to act as an informer or special agent of a law enforcement officer without Court permission.

## Conclusion

The government respectfully requests that the Court impose the above requested sentence.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

by: */s/ Rick D. Young*
Rick D. Young
Assistant United States Attorney
Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-7660

Attachment A

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| DG | DG/IS | 2/14/2012 | Money Transfer | $ 400,000.00 | | $ (400,000.00) | Lakeview |
| DG | DG/IS | 5/18/2012 | Money Transfer | $ 2,200,000.00 | | $ (2,200,000.00) | Lakeview |
| DG | DG/IS | 5/18/2012 | Money Transfer | $ 400,000.00 | | $ (400,000.00) | Lakeview |
| DG | DG/IS | 7/10/2012 | Check | | $ (4,687.50) | $ 4,687.50 | Lakeview |
| DG | DG/IS | 7/11/2012 | Check | | $ (32,812.50) | $ 32,812.50 | Lakeview |
| HL | HL | 7/19/2012 | Check | | $ (2,000.00) | $ 2,000.00 | Lakeview |
| HL | HL | 7/23/2012 | Deposit | $ 50,000.00 | | $ (50,000.00) | Lakeview |
| DG | DG/IS | 10/15/2012 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| DG | DG/IS | 10/16/2012 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| HL | HL | 10/17/2012 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| DG | DG/IS | 10/19/2012 | Money Transfer | $ 700,000.00 | | $ (700,000.00) | Champaign |
| HL | HL | 11/15/2012 | Deposit | $ 150,000.00 | | $ (150,000.00) | Champaign |
| ED/AD | ED/AD | 12/11/2012 | Deposit | $ 150,000.00 | | $ (150,000.00) | Champaign |
| DG | DG/IS | 12/20/2012 | Money Transfer | $ 2,700,000.00 | | $ (2,700,000.00) | Champaign |
| DG | DG/IS | 1/14/2013 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| DG | DG/IS | 1/16/2013 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| HL | HL | 2/7/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| DG | DG/IS | 4/15/2013 | Check | | $ (89,250.00) | $ 89,250.00 | Champaign |
| DG | DG/IS | 4/15/2013 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| DG | DG/IS | 4/16/2013 | Check | | $ (12,750.00) | $ 12,750.00 | Champaign |
| DG | DG/IS | 4/16/2013 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| ED/AD | ED/AD | 4/18/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| HL | HL | 4/18/2013 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 4/18/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| DG | DG/IS | 7/15/2013 | Check | | $ (89,250.00) | $ 89,250.00 | Champaign |
| DG | DG/IS | 7/15/2013 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| DG | DG/IS | 7/16/2013 | Check | | $ (12,750.00) | $ 12,750.00 | Champaign |
| DG | DG/IS | 7/16/2013 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| DG | DG/IS | 7/17/2013 | Money Transfer | $ 500,000.00 | | $ (500,000.00) | Vermilion |
| ED/AD | ED/AD | 7/18/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| HL | HL | 7/18/2013 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 7/18/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| GD | MD/GD | 7/24/2013 | Deposit | $ 75,000.00 | | $ (75,000.00) | Vermilion |

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| MD/GD | MD/GD | 7/24/2013 | Deposit | $ 75,000.00 | | $ (75,000.00) | Vermilion |
| SS | SS | 7/26/2013 | Deposit | $ 100,000.00 | | $ (100,000.00) | Vermilion |
| Estate of RJ | Estate of RJ | 8/16/2013 | Money Transfer | $ 100,000.00 | | $ (100,000.00) | Vermilion |
| SW | SW | 8/16/2013 | Deposit | $ 100,000.00 | | $ (100,000.00) | Vermilion |
| DG | DG/IS | 8/22/2013 | Money Transfer | $ 437,500.00 | | $ (437,500.00) | Vermilion |
| DG | DG/IS | 8/22/2013 | Money Transfer | $ 62,500.00 | | $ (62,500.00) | Vermilion |
| DG | DG/IS | 10/15/2013 | Check | | $ (89,250.00) | $ 89,250.00 | Champaign |
| DG | DG/IS | 10/15/2013 | Check | | $ (12,750.00) | $ 12,750.00 | Champaign |
| DG | DG/IS | 10/15/2013 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| DG | DG/IS | 10/15/2013 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| DG | DG/IS | 10/15/2013 | Check | | $ (1,250.00) | $ 1,250.00 | Vermilion |
| SS | SS | 10/16/2013 | Check | | $ (2,000.00) | $ 2,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 10/17/2013 | Check | | $ (1,000.00) | $ 1,000.00 | Vermilion |
| ED/AD | ED/AD | 10/18/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| HL | HL | 10/18/2013 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 10/18/2013 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 10/18/2013 | Check | | $ (2,000.00) | $ 2,000.00 | Vermilion |
| GD | MD/GD | 10/21/2013 | Check | | $ (1,500.00) | $ 1,500.00 | Vermilion |
| MD/GD | MD/GD | 10/21/2013 | Check | | $ (1,500.00) | $ 1,500.00 | Vermilion |
| SW | SW | 10/22/2013 | Check | | $ (1,000.00) | $ 1,000.00 | Vermilion |
| DG | DG/IS | 10/31/2013 | Check | | $ (8,750.00) | $ 8,750.00 | Vermilion |
| DG | DG/IS | 1/13/2014 | Money Transfer | | $ (26,250.00) | $ 26,250.00 | Vermilion |
| SS | SS | 1/16/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| GD | MD/GD | 1/17/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 1/17/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| ED/AD | ED/AD | 1/17/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| DG | DG/IS | 1/21/2014 | Check | | $ (89,250.00) | $ 89,250.00 | Champaign |
| DG | DG/IS | 1/21/2014 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| SW | SW | 1/21/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 1/22/2014 | Check | | $ (12,750.00) | $ 12,750.00 | Champaign |
| DG | DG/IS | 1/22/2014 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| DG | DG/IS | 1/22/2014 | Check | | $ (3,750.00) | $ 3,750.00 | Vermilion |
| Estate of RJ | Estate of RJ | 1/22/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |

Attachment A

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| HL | HL | 1/24/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 1/24/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 1/24/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 4/11/2014 | Money Transfer | | $ (26,250.00) | $ 26,250.00 | Vermilion |
| GD | MD/GD | 4/14/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 4/14/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| DG | DG/IS | 4/14/2014 | Check | | $ (89,250.00) | $ 89,250.00 | Champaign |
| DG | DG/IS | 4/14/2014 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| SW | SW | 4/18/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| HL | HL | 4/28/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 4/28/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 4/28/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 4/29/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SS | SS | 4/29/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 5/7/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| DG | DG/IS | 5/13/2014 | Check | | $ (12,750.00) | $ 12,750.00 | Champaign |
| DG | DG/IS | 5/13/2014 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| DG | DG/IS | 5/13/2014 | Check | | $ (3,750.00) | $ 3,750.00 | Vermilion |
| DG | DG/IS | 7/11/2014 | Money Transfer | | $ (26,250.00) | $ 26,250.00 | Vermilion |
| DG | DG/IS | 7/14/2014 | Check | | $ (89,250.00) | $ 89,250.00 | Champaign |
| DG | DG/IS | 7/14/2014 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| GD | MD/GD | 7/15/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 7/15/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| DG | DG/IS | 7/15/2014 | Check | | $ (12,750.00) | $ 12,750.00 | Champaign |
| DG | DG/IS | 7/15/2014 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| DG | DG/IS | 7/15/2014 | Check | | $ (3,750.00) | $ 3,750.00 | Vermilion |
| SS | SS | 7/16/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 7/17/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| HL | HL | 7/17/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 7/17/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 7/17/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 7/17/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 7/22/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |

Attachment A

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| DG | DG/IS | 7/25/2014 | Money Transfer | | $ (24,097.50) | $ 24,097.50 | Champaign |
| DG | DG/IS | 7/25/2014 | Money Transfer | | $ (4,011,192.50) | $ 4,011,192.50 | Champaign |
| DG | DG/IS | 7/25/2014 | Money Transfer | | $ (573,027.50) | $ 573,027.50 | Champaign |
| DG | DG/IS | 7/25/2014 | Money Transfer | | $ (3,442.50) | $ 3,442.50 | Champaign |
| DG | DG/IS | 10/21/2014 | Check | | $ (98,437.50) | $ 98,437.50 | Lakeview |
| DG | DG/IS | 10/21/2014 | Check | | $ (14,062.50) | $ 14,062.50 | Lakeview |
| DG | DG/IS | 10/21/2014 | Check | | $ (3,750.00) | $ 3,750.00 | Vermilion |
| DG | DG/IS | 10/22/2014 | Money Transfer | | $ (26,250.00) | $ 26,250.00 | Vermilion |
| GD | MD/GD | 10/24/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 10/24/2014 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| SS | SS | 10/24/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 10/27/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| HL | HL | 10/28/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 10/28/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 10/28/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 11/5/2014 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 11/6/2014 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| DG | DG/IS | 1/20/2015 | Money Transfer | | $ (26,250.00) | $ 26,250.00 | Vermilion |
| GD | MD/GD | 1/23/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 1/23/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| SS | SS | 1/27/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 1/29/2015 | Check | | $ (3,750.00) | $ 3,750.00 | Vermilion |
| HL | HL | 1/29/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 1/29/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 1/29/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 1/30/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| SW | SW | 1/30/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 2/6/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 4/20/2015 | Money Transfer | | $ (26,250.00) | $ 26,250.00 | Vermilion |
| DG | DG/IS | 4/21/2015 | Check | | $ (3,750.00) | $ 3,750.00 | Vermilion |
| GD | MD/GD | 4/23/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 4/23/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| SS | SS | 4/23/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |

Attachment A

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| HL | HL | 4/28/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 4/28/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 4/28/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 4/28/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 4/30/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| Estate of RJ | Estate of RJ | 7/14/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SS | SS | 7/27/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| GD | MD/GD | 7/28/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 7/28/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| HL | HL | 7/28/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 7/28/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 7/28/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 7/28/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 7/30/2015 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| ED/AD | ED/AD | 8/3/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| Estate of RJ | Estate of RJ | 8/25/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 10/22/2015 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| GD | MD/GD | 11/10/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 11/10/2015 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| SS | SS | 11/12/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| HL | HL | 11/13/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 11/13/2015 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 11/13/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 11/17/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 11/25/2015 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 1/29/2016 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| GD | MD/GD | 2/1/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 2/1/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| Estate of RJ | Estate of RJ | 2/1/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SS | SS | 2/1/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| HL | HL | 2/2/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 2/2/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 2/2/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |

Attachment A

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| ED/AD | ED/AD | 2/4/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| SW | SW | 2/5/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 4/21/2016 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| GD | MD/GD | 5/2/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 5/2/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| ED/AD | ED/AD | 5/3/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| HL | HL | 5/5/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 5/5/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| HL | HL | 5/5/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 5/5/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SS | SS | 5/6/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 5/19/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| DG | DG/IS | 7/26/2016 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| GD | MD/GD | 7/27/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 7/27/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| SS | SS | 7/27/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| HL | HL | 7/28/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 7/29/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| SW | SW | 8/1/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 8/9/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| HL | HL | 8/24/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 8/24/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Lakeview |
| DG | DG/IS | 10/27/2016 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| GD | MD/GD | 11/7/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| MD/GD | MD/GD | 11/7/2016 | Check | | $ (2,250.00) | $ 2,250.00 | Vermilion |
| HL | HL | 11/7/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Champaign |
| HL | HL | 11/7/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 11/8/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SS | SS | 11/10/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| SW | SW | 11/10/2016 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| ED/AD | ED/AD | 11/16/2016 | Check | | $ (6,000.00) | $ 6,000.00 | Champaign |
| DG | DG/IS | 11/21/2016 | Check | | $ (50,000.00) | $ 50,000.00 | Lakeview |
| DG | DG/IS | 12/1/2016 | Check | | $ (350,000.00) | $ 350,000.00 | Lakeview |

Attachment A

| Name | Investor | Date Posted | Type | Contribution | Distribution | Net to Investor | Property |
|---|---|---|---|---|---|---|---|
| DG | DG/IS | 1/30/2017 | Check | | $ (30,000.00) | $ 30,000.00 | Vermilion |
| SS | SS | 2/15/2017 | Check | | $ (3,000.00) | $ 3,000.00 | Vermilion |
| Estate of RJ | Estate of RJ | 7/18/2017 | Check | | $ (100,000.00) | $ 100,000.00 | Vermilion |
| SW | SW | 7/19/2017 | Check | | $ (100,000.00) | $ 100,000.00 | Vermilion |
| SS | SS | 7/31/2017 | Wire | | $ (100,000.00) | $ 100,000.00 | Vermilion |
| | | | | | | **$ (689,240.00)** | |